IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FLEET NATIONAL BANK,
6 East Trenton Avenue
Suite 201
Morrisville, Pennsylvania 19067

Plaintiff,

v.

FIRST CHOICE FINANCIAL
3901 Capital Boulevard, Suite 115
Raleigh, North Carolina 27604

Defendant.

CIVIL ACTION NO.: 02cv3582

**COMPLAINT - CIVIL ACTION**

**A. THE PARTIES AND JURISDICTION**

1. Plaintiff is Fleet National Bank ("Fleet") which is the successor by merger to Summit Bank ("Summit"). Fleet's place of business is in the Commonwealth of Massachusetts at 100 Federal Street, Boston, Massachusetts, 02110, but the office of Fleet that is responsible for this matter is located at 6 East Trenton Avenue, Suite 201, Morrisville, Pennsylvania, 19067. Additionally, the Chattel Paper Collateral (as herein defined) has at all times relevant been located in Morrisville, Pennsylvania.

2. Defendant, First Choice Financial ("First Choice"), is upon information and belief a North Carolina company, with its principal place of business located at 3901 Capital Boulevard, Suite 115, Raleigh, North Carolina, 27604.

3. This Court has subject matter jurisdiction because of diversity of citizenship under 28 U.S.C. §1332. Plaintiff Fleet is a citizen solely of the Commonwealth of Massachusetts. First Choice is a citizen solely of the State of North Carolina. The amount in

controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. Venue is proper in this district under 28 U.S.C. §1391(a), because the Chattel Paper Collateral that is the subject of the action is situated in Morrisville, Pennsylvania.

**B. BACKGROUND FACTS**

5. Ken-Mar Finance, Inc. ("Ken-Mar") is a finance company engaged primarily in the business of providing consumer loans to individuals in the geographic area of North Carolina.

6. On December 15, 1998, Ken-Mar entered into a Loan Agreement with Fremont Financial Corporation ("Fremont"), a California corporation.

7. In or about October, 1999, Fremont's interest in the Loan Agreement and other related documents was assigned to Summit Bank. Fleet is the successor by merger to Summit Bank.

8. The Loan and Security Agreement ("Loan Agreement") provides for an extension to Ken-Mar of a revolving loan up to $4,500,000 for a term of three years based upon revolving loan advances made at Ken-Mar's request as defined in and subject to limitations stated in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A".

9. The Loan Agreement further provided that loans to Ken-Mar are fully secured by a valid perfected first priority security interest in the collateral as defined in the Loan Agreement (the "Collateral") which includes but is not limited to all of Ken-Mar's accounts receivable, chattel paper, documents, equipment, general intangibles, instruments and investment property (instruments and chattel paper are hereinafter defined as the "Chattel Paper Collateral"). Fleet perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Secretary of State of North Carolina. Additionally, Fleet's security interest in the Chattel Paper Collateral was evidenced by a physical stamp on the Chattel Paper Collateral stating that

the Chattel Paper Collateral was subject to the first lien of Fleet. Finally, Fleet perfected its security interest in the Chattel Paper Collateral consisting of instruments and tangible chattel papers by taking possession of the Collateral in accordance with Uniform Commercial Code Sections 9-313.

10. On or about October 22, 2001, Ken-Mar and First Choice entered into a agreement whereby First Choice allegedly purchased from Ken-Mar certain Chattel Paper Collateral in which Fleet held a perfected first security interest for the sum of $100,166.84.

11. Upon information and belief, First Choice did not receive any original Chattel Paper Collateral, as Fleet had at all relevant times the original Chattel Paper Collateral in its possession in Morrisville, Pennsylvania. Also on information and belief, First Choice received ledger cards evidencing the amounts on the Chattel Paper Collateral allegedly purchased by First Choice, originals of the supporting obligations, as such term is defined in UCC §9-102 and certain underlying credit documents ("First Choice Chattel Paper Documents"), which are necessary to collect upon the Chattel Paper Collateral.

12. This sale was made without the consent, knowledge or approval of Fleet. In fact, at all times relevant, Ken-Mar was in default under the terms of the Loan Agreement and was subject to a Forbearance Agreement which prohibited a sale and or conveyance of any Collateral. A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit "B".

13. In or about November, 2001, Fleet and Ken-Mar entered into a Preliminary Settlement Agreement wherein Ken-Mar acknowledged that it was obligated to Fleet in the principal amount of $1,397,074.94 under the terms of the Loan Agreement; that the obligations under the Loan Agreement were secured by a valid security interest in favor of Fleet in all assets of Ken-Mar; that Ken-Mar was insolvent and lacked sufficient cash to maintain its business as a going concern; and finally that Ken-Mar agreed that effective November 16, 2001 all the assets

of Ken-Mar were to be voluntarily turned over to Fleet. A true and correct copy of the Preliminary Settlement Agreement is attached hereto as Exhibit "C".

14. Subsequent to the peaceful turnover, Fleet became aware that First Choice Chattel Paper Documents were unaccounted for. Upon further investigation, Fleet became aware for the first time of the alleged purchase of the First Choice Chattel Paper Documents by First Choice and that First Choice was collecting payments from the consumer borrower show loans secured by the Chattel Paper Collateral that belonged to Fleet.

15. Fleet immediately made demand upon First Choice for turnover of the First Choice Chatter Paper Documents. Despite due demand, First Choice has failed to turnover the assets.

**COUNT I -- FOR REPLEVIN**

16. The allegations contained in Paragraphs 1 through 15 above are incorporated by reference herein as if set forth in full.

17. Fleet's security interest in the First Choice Collateral is superior to any interest of First Choice.

18. As a result of the facts and circumstances alleged above, Fleet is entitled to the First Choice Collateral Paper Documents and proceeds thereof.

WHEREFORE, Fleet demands judgment of replevin against the Defendant First Choice Financial adjusting and declaring that Fleet is entitled to immediate, unconditional possession of all First Choice Chattel Paper Documents and/or the proceeds thereof including but not limited to books, records, equipment, and all Chattel Paper, instruments and any other documents. Fleet demands judgment for damages for unlawful detention plus interest, and further awarding Fleet its reasonable attorneys' fees and costs and for such other and further relief as the court may determine to be appropriate under the circumstances.

**COUNT II -- FOR CONVERSION**

19. The allegations contained in Paragraph 1 through 18 of this Complaint are incorporated herein by reference.

20. By reason of its conduct alleged above, in particularly, but not limited to its failure to turnover the First Choice Chattel Paper Documents despite due demand, First Choice has converted the First Choice Chattel Paper Documents and/or the proceeds thereof to its own use that rightly belongs to Fleet.

21. The actions in this regard by First Choice were knowing and intentional.

WHEREFORE, Fleet National Bank demands judgment against First Choice for compensatory damages and punitive damages, plus interest, reasonable attorneys' fees and costs and for such other and further relief as the Court may determine to be appropriate under the circumstances.

**COUNT III -- FRAUD**

22. The allegations contained in Paragraph 1 through 21 of this Complaint are incorporated herein by reference. First Choice Financial knew or should have known by the appropriate use of reasonable, commercial discretion that the First Choice Chattel Paper Documents were subject to a prior perfected security interest.

23. First Choice either knowingly or without due regard to standard commercial practices utilized in this industry purchased collateral subject to Fleet's prior perfected security interest.

24. Further, upon becoming aware of Fleet's prior perfected security interest First Choice continued to liquidate the First Choice Chattel Paper Documents and/or converted it to its own use.

25. Fleet was damaged as a result of such fraudulent conduct in amounts equal to the value of the First Choice Chattel Paper Documents.

WHEREFORE, Fleet National Bank demands judgment against First Choice for

compensatory damages and punitive damages plus interest, reasonable attorneys' fees and costs and for such other relief as the Court may determine to be appropriate under the circumstances.

**COUNT IV -- FOR CONSTRUCTIVE TRUST AND EQUITABLE RELIEF**

26. The allegations contained in paragraph 1 through 25 of this Complaint are incorporated herein by reference. Fleet's security interest in the collateral is prior to any interest in which First Choice may allege in the First Choice Chattel Paper Documents.

27. First Choice has failed and refused to comply with Fleet's lawful demand for turnover of the First Choice Chattel Paper Documents.

28. Fleet has and will continue to suffer irreparable harm by reason of First Choice's failure to comply with the turnover and such irreparable harm is exasperated by the cash nature of First Choice's business. In particular, to the extent that First Choice has in the past and continues to fail to collect, receive and hold proceeds of the First Choice Chattel Paper Documents in trust for the benefit of Fleet, Fleet's rights and priority interest in the cash collateral is at least impaired if not lost forever.

29. There is no adequate remedy at law to protect Fleet's rights and priority interest in the proceeds of Fleet's First Choice Chattel Paper Documents as described above.

WHEREFORE, Fleet National Bank requests the following relief:

a) A declaration that all sums collected by First Choice on the Chattel Paper Collateral are held in constructive for the benefit of Fleet;

b) an injunction;

c) such other relief as the Court may deem just and equitable;

d) an injunction compelling First Choice to turn over all of the First Choice Chattel Paper Documents and in particular compelling First Choice: (i) to collect and receive all accounts receivable of the First Choice Chattel Paper Documents and the proceeds thereof for the benefit of Fleet and immediately deliver the same to Fleet; (ii) directing First Choice to make an

accounting of all First Choice Chattel Paper Documents and the proceeds thereof and to provide such accounting to Fleet; and (iii) directing First Choice to notify each and every obligor on the First Choice Chattel Paper Documents and/or the proceeds thereof to make payment directly to Fleet.

BLANK ROME COMISKY & McCAULEY LLP

BY: /s/ Alan C. Gershenson

ALAN C. GERSHENSON, ESQUIRE
Attorney I.D. No. 09925
MICHAEL J. SHAVEL, ESQUIRE
Attorney I.D. No. 60554
One Logan Square
Philadelphia, PA 19103
(215) 569-5500

Attorneys for Plaintiff,
Fleet National Bank

Dated: June 4, 2002